UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAKE HAVEN MOBILE HOME OWNERS, INC.,
a Florida not-for-profit corporation,

Plaintiff,

v.                                                      Case No.: 8:03-CV-1744-T-MAP

ORANGELAND VISTAS, INC., d/b/a LAKE
HAVEN, a foreign corporation, and
MANUFACTURED HOME COMMUNITIES, INC.,

Defendants.
_____/

## ORDER

This is an action for declaratory relief and damages by a board of directors of a mobile

homeowners' association ("Board") against its park owner and operator ("Defendants") over a rent

increase to 344 park residents.  At issue is whether Defendants' failure to notify each and every

affected homeowner pursuant to the notice demands of the Florida Mobile Home Act ("Act")

rendered all the rent increases to all the affected and properly noticed homeowners invalid.  Having

considered the legislative scheme and the judicial and administrative decisions interpreting that

scheme, as well as the parties arguments, the answer to that question is no.  Accordingly, summary

judgment for Defendants on this issue is appropriate.

*A.  Procedural Note*

The parties consented to my jurisdiction (*see* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73) after

the district judge ruled on summary judgment motions.  None of their motions addressed specifically

the consequences for failing to meet Act's notice demands.  Nevertheless, at the final pretrial

conference before me, it became obvious the parties had ascribed different interpretations to the legislation and that a resolution of the issue before trial would narrow the lawsuit. Consequently, both sides accepted my invitation for renewed summary judgment motions on this precise issue by answering questions to court's interrogatories (docs. 107, 108, 110). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*); *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997) (district courts unquestionably have power to trigger summary judgment on their own initiative provided the court ensures that the parties have adequate notice that they must bring forward all their evidence as required under Fed.R.Civ.P. 56). *See also Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (trial judges have the power and duty to define issues); MANUAL FOR COMPLEX LITIGATION, FOURTH, §§ 10.1, 11.33 (judges "should probe into the parties' claims and defenses and seek specific information including proof about damages and causation) (emphasis in original) and 11.6 (one of the purposes of final pretrial conference is to improve the quality of the trial through more thorough preparation, which includes identifying and potentially resolving important issues).

B. *Standard of Review*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly support summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact. *Anderson v.*

2

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*

    *C.  Facts*

    Located in Pinellas County, Lake Haven is a 379 lot mobile home park owned by Orangeland Vistas and managed by Manufactured Home Communities.  Many of Lake Haven's tenants winter here but live elsewhere in the United States and Canada during the remaining seasons. Some leave forwarding addresses with the park's manager, but others do not.

    On or about September 25, 2002, Defendants' park manager, pursuant to a park owner's obligations under § 723.037 mailed notices about a January 2003 rent increase to 344 lot owners and to the board of directors of the homeowners's association.[1]  Generally, these increases ranged from $30 to $141 a month.  The manager mailed the notices either to the affected homeowner's park address or, if applicable and known, the homeowner's forwarding address.  As many as 20 of the 344 affected homeowners did not receive notice of the rent increase.[2]  While Board concedes Defendants noticed an overwhelming percentage of Lake Haven's homeowners, it nonetheless argues the Defendants' failed to strictly comply with § 723.037(1) because they did not serve the September 25 notice on *every* affected homeowner.  Consequently, so the Board argues per § 723.037(1), the rent increase as to all homeowners is invalid, even to those tenants who timely

---

[1]  The parties seem to disagree on the actual number of affected homeowners.  The Board cites 344 (Walker affidavit at doc. 42); Defendants count 351 (Torres affidavit at doc. 36-2). The precise number for summary judgment purposes is inconsequential for the analysis here; nevertheless, applying Rule 56 principles, I accept the Board's total.

[2]  The Defendants dispute this figure.  Instead, they concede their notices were arguably defective as to, at most, only six homeowners, for varying reasons.  *See* doc. 109-1 at p. 5.  The parties' differences here are frankly immaterial for this analysis.  Both essentially agree almost everyone received notice.  Nonetheless, for Rule 56 purposes, I accept the Board's score.

received notice.

D. *Discussion*

"Legislative intent is the polestar that guides a court's statutory construction analysis" and to determine that intent a court first looks to the statute's plain meaning. *Knowles v. Beverly Enterprises-Florida, Inc.,* 898 So.2d 1, 4 (Fla. 2005). If the language is clear and unambiguous, the plain and obvious meaning controls, and it is unnecessary to resort to statutory construction aides. *Id.* But to effect legislative intent, it is "axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole." *Id* at 898 So.2d 6 (emphasis in original) quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.,* 604 So.2d 452, 455 (Fla. 1992). And "*this intent must be given effect even though it may contradict the strict letter of the statute*." *Knowles,* 898 So. 2d at 4 (emphasis in original); *Florida State Racing Comm. v. McLaughlin*, 102 So. 2d 574 (Fla. 1958) (when the statute in question is part of a larger statutory act, the court should examine the entire act and those statute in *pari materia* in order to ascertain the overall legislative intent). Thus, if other parts of the same or closely related statute cast doubt about the plain meaning of the contested language, the court may consider matters extraneous to the statute like administrative decisions by the agency charged with administering its provisions. *Id. See also Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 n.7 (11th Cir. 2001) (Eleventh Circuit courts must defer to state agency interpretations when construing Florida substantive law as Florida courts do); *Campus Communications v. Dept. of Revenue*, 374 So. 2d 1290, 1295 (Fla. 1985) (agency interpretation of a statute it implements is entitled to deference).

### 1.  the Florida Mobile Home Act

In contrast to other landlord-tenant relations where the tenant rents both the land and the unit from the landlord, a mobile homeowner owns the mobile home which rests on the landlord's land. Mobile homes are often large and, once in place, not mobile in any real sense, a consequence that makes mobile homeowner peculiarly vulnerable to the whims of a park owner.  *See* 1 J. Hauser, *Florida Residential Landlord- Tenant Manual*, Chapter 8 (Supp. 1991) (noting the then current cost of moving a mobile home ranged from $4,000 to $10,000).  Recognizing the "inherently real and substantial differences which distinguish [this landlord-tenant relationship] from other landlord-tenant relationships," the Florida Legislature enacted the Florida Mobile Home Act in 1984 (Fla. Stat. §§ 723.001 *et seq.*).  *See* § 723.004.   In short, the Act strikes a regulatory balance between safeguarding homeowners from abuse and protecting the park owners' legitimate business interests. *See* § 723.004(1).  To implement its goals, the Legislature preempted to the state (as opposed to local governments) all "regulation and control" of mobile home lot rents" and "other matters" relating to the landlord-tenant relationship "falling within the purview of this chapter." § 723.004(2) and (3).  And it vested the Division of Florida Land Sales, Condominiums, and Mobile Homes of the Department of Business and Professional Regulation ("the Division") with the power and duty to enforce and ensure compliance with the provisions of Chapter 723 and the rules it promulgates within its scope relating to the rental, development, and sale of mobile home parks. § 723.005.  The scheme also empowered homeowners and to a lesser extent a homeowners' board of directors or a committee of homeowners to take civil action after exhausting available administrative remedies. *See e.g.* §§ 723.004(5), 723.0381, 723.056.

*a.  statutory notice requirements*

Sensing an individual homeowner's vulnerability to unreasonable rent increases or rule changes, the Legislature designed a procedure whereby such adjustments can only be effected after properly notifying the affected mobile homeowners and affording them an opportunity to be heard and mediate any resulting dispute.  *Herrick v. Florida Dept. Of Bus. Reg., Div. of Fla. Land Sales*, 595 So. 2d 148, 156 (Fla. 1st DCA 1992).  It is the park owner's obligations under § 723.037(1) and more particularly the consequences for any failure to notice each and every affected homeowner that are at the heart of the dispute.  That section provides in pertinent part:

> [a] park owner shall give written notice to each affected homeowner and the board of directors of the homeowners' association, if one has been formed, at least 90 days prior to any increase in lot rental amount …. by the park owner ….  The notice shall identify all other affected homeowners, which may be by lot number, name, group, or phase.  If the affected homeowners are not identified by name, the park owner shall make the names and addresses available upon request. … The homeowners' association shall have no standing to challenge the increase in lot rental amount … unless a majority of the affected homeowners agree, in writing, to such representation.

FLA. STAT. § 723.037(1).

The Board seizes on statute's plain language: "[a] park owner *shall* give written notice to *each* affected homeowner and the board of directors of the homeowners' association."  And from this the Board reasons that a park owner's failure to give notice to *every* homeowner dooms the rent increase as to *all* homeowners.  This interpretation, however, conflicts with the remaining regulatory scheme and would mandate an impossible standard for a park owner to achieve – perfect service before any rent increase or rule change.  For this novel and onerous proposition, the Board offers little persuasive support.  Clearly, no binding Florida court has construed the provision as the Board proposes.  Indeed, after examining the available decisions by Florida courts concerning the

6

construction of § 723.037(1), an administrative agency decision on point, and the remaining parts of the Act, the Board's theory contravenes the stated legislative intent for the Act: "to protect those parties [homeowners and park owners] to the extent that they are affected by the inequalities, while preserving and protecting the rights of both parties …" *See* § 723.004(1).  Accepting the Board's construction would shift this balance unfairly and inequitably in favor of the homeowner.

## 2.  *Florida court decisions*

Neither the Florida Supreme Court or any of Florida's intermediate appellate courts have construed § 723.037(1), at least as it may implicate a park owner's failure to notice each and every homeowner. Nonetheless, a federal court has a duty to determine state law as it believes the state high court would, even in the absence of guiding precedent.  *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001); 19 Wright, Miller & Cooper, *Federal Practice and Procedure:  Jurisdiction 2d* §4507 (1996).  Hence, when state courts have not issued any decisions on the precise issue before it, a federal court should look for other indicia of state law.  *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 178 (1941) ("it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State").  While mere *obiter dictum* may be entitled to little weight, a carefully considered statement by the state court, even though technically dictum, may be persuasive evidence of how a state court might decide the point.  Wright, *supra*, at § 4507.

Although Lake Haven relies on two Florida court decisions for the proposition that § 723.037(1) should be strictly construed, these cases are distinguishable and based on an administrative ruling that the Division subsequently modified.   In *Menna v. Sun Country Homeowners Assoc., Inc.*, 604 So. 2d 897 (Fla. 2d DCA 1992), a Florida appellate court opined that

a park owner failed to comply with §723.037(1)'s notice requirements when it neglected to serve the board of directors of the homeowners' association with written notice of the rental increase. Specifically, the court found that the park owner did not comply with Florida Admin. Rule 7D-32.002(1), a rule interpreting §723.037(1). *Menna, supra,* at 899. Rule 7D-32.002(1) provided that the notice of rental increase "is not effective" until given to the last of all affected homeowners in the park and the board of directors and that no increase or reduction in services shall be effective prior to ninety days after the date all affected homeowners and the board of directors have been given notice. The Division, however, repealed Rule 7D-32.002(1) after *Menna*.[3] The other case the Board relies upon, *Eastman v. Flor-Ohio, Ltd.*, 744 So. 2d 499 (Fla. 5th DCA 1999), relies on *Menna* to support of its statement that §723.037(1)'s notice requirements are to be strictly construed (*Eastman*, like *Menna*, involved a park owner's failure to give notice of a rent increase to the members of the homeowners' association board of directors).[4] Hence, neither of these cases is particularly persuasive. Besides, the failure to notify a homeowner's board, the critical fact in both these cases, stands conceptually on different grounds from the Board's argument that each and every homeowner must receive notice of a rent increase before that increase can take effect. The Legislature envisioned a democratic and collective action by homeowners for challenging a rent

---

[3] The new rule the Division enacted after *Menna*, 61B-32.002, does not attempt to interpret §723.037(1)'s notice requirements and does not include an equivalent to 7D-32.002(1).

[4] *Eastman* was decided after Rule 7D-32.002(1)'s repeal but applied the rule because it concerned a rent increase during the operative period of the rule. In citing to *Menna* the *Eastman* court stated: "We know from the only case law in existence at the time the class action suit was tried that the notice requirements contained in section 723.037(1), Florida Statutes, were to be strictly construed." *Eastman,* 744 So. 2d at 504. Perhaps this was a subtle, indirect hint that after *Menna* and the repeal of 7D-32.002(1) other cases construed the statute's notice requirements more liberally.

increase with the board or a committee acting as their representatives.  *See* § 723.037(4), (5); §
723.038; § 723.0381.  Notice to the board, consequently, is seminal for collective action, and unlike
in the cited cases, the Defendants notified the Lake Haven's Board.

More in keeping with Legislature's stated intent is *Mihivic Corp. v. Horizon Village, Inc.*,
734 So. 2d 1090 (Fla. 2d DCA 1999).  In that case a mobile homeowners' association sued the park
owner asserting the owner failed to comply with § 723.037(1)'s ninety-day notice requirement.  The
notice informed residents the cost of sewer would no longer be included in their rent; instead, an
outside utility company would bill them.  Because the utility company billed within the ninety days,
the association claimed the park owner had violated § 723.037(1).  The court disagreed finding the
park owner had satisfied the purpose of § 723.037(1).  The owner was not responsible for the utility
company's actions which caused the new sewer service to begin before the end of the ninety day
period.  *Id.*

### 3.   administrative decision

In *Florida Manuf. Housing Assoc. Inc. v. Division of Fla. Land Sales, Condominiums and
Mobile Homes, Dept. of Bus. Reg.*, 1992 WL 880740 (Fla. Div. Admin. Hrgs. Nov. 18. 1992), an
association of park owners administratively challenged the validity of portions of Rule 7D-32.002,
the rule the *Menna* court had applied several months earlier.  Subsection one of that rule advanced
the position the Board strikes here: a rental increase is not effective for any individual homeowner
until it is given to the last of all affected homeowners.  The Division contended § 723.037(1)'s
terms, a park owner "shall give written notice to each affected homeowner" supported its
interpretation.  The administrative law judge rejected the Division's reasoning as flawed because
it ignored one of the purposes of the statute – to allow the home owners to confer and determine

whether to meet with the park owner to challenge the change:

> The statute is clear: A home owner who has not received a notice is not affected. It is an impermissible enlargement of the statutory requirements that the validity of the notice to the rest of the park hinges upon whether all "affected" home owners were given the notice.[5]

1992 WL 880740, *7.

### 4. statutory scheme

Lastly, the statutory scheme, when read as a whole, does not support the Board's notice theory. Notably, the Legislature empowered the Division to take regulatory action as to certain provisions of the Act (*see* § 723.005) but tempered its oversight authority by requiring the agency to take into account specific factors including "the gravity of the violation, whether the person has *substantially complied* with the provisions in this Chapter, and any action taken to mitigate or correct the violation." § 723.006(5)(c)(1)-(3) (emphasis added). Unquestionably, the Defendants met this standard. The Board, without any persuasive justification, asks for more and beyond what the Florida Legislature ever envisioned. Accepting the Board's interpretation would upset the Act's regulatory balance between tenant and owner.

### E. Conclusion

---

[5] The ALJ concluded a park owner met the statute's notice requirement once "the notice is dropped in the mail box." Although the Division could have taken judicial review of the ALJ's adverse decision, it decided otherwise, a tacit concession to the correctness of the ALJ's decision. *See* Fla. Stat. § 120.68. Presumably, it concluded the reviewing court would have rejected its position. In any event, the Defendants note that a Florida circuit judge has recently relied on this administrative ruling in denying the very type of claim the Board makes here. *See Gardens Homeowners' Association v. Mihevic Management, Inc.*, Twelfth Judicial Circuit in and for Manatee County, Florida, case no. 2004-CA-1803 (September 12, 2005) (park owner's rental increase notice valid on all homeowners who were properly served with the notice of rental increase even though the notice was not served on all affected homeowners).

Viewing the facts in the light most favorable to the non-moving party as required for Rule 56 purposes, I find that the Defendants' failure to properly notify up to twenty of the 351 homeowners does not invalidate the notices of rental increase properly given to the large majority of the homeowners.  Adopting these figures, the Defendants properly notified all but 5.7% of the affected homeowners.  After considering the existing state law and relevant administrative decision to construe § 723.037(1)'s notice requirements the way the Florida Supreme Court would, I find that the Defendants complied with the notice requirements of Fla. Stat. § 723.037(1).  Accordingly, it is hereby

ORDERED:

1.  Summary judgment is granted in favor of Defendants as to Count I.

DONE AND ORDERED in chambers at Tampa, Florida on this 5th day of January, 2006.


MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE